**Carol A. CHARETTE, Plaintiff,**

v.

**The Honorable Robert M. WALKER, Acting Secretary of the Army,\* Defendant.**

**Civ. Action No. 96–2686(JHG).**

United States District Court, District of Columbia.

March 11, 1998.

---

\* In accordance with Federal Rule of Civil Procedure 25(d)(1), the Court has substituted Robert M. Walker's name for that of Togo West.

Gary Rowland Myers, Gary Myers & Associates, Washington, DC, for Plaintiff.

Alexander Daniel Shoaibi, U.S. Atty.'s Office, Washington, DC, for Federal Defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

In 1990 plaintiff Carol A. Charette was a Captain in the United States Army stationed in Germany in command of C Company, 79th Engineer Combat Battalion, 18th Engineer Brigade. In the fall of 1990, plaintiff re-

ceived an Officer Evaluation Report (OER) that recommended she be relieved of her command for cause. Captain Charette was relieved for cause on November 5, 1990. This suit represents the latest iteration in plaintiff's long quest to have that relief-for-cause OER overturned or expunged from her military personnel records.

Presently pending are defendant's Motion to Dismiss or in the Alternative for Summary Judgment, plaintiff's Cross–Motion for Summary Judgment, and plaintiff's Motion for Leave to File an Amended Complaint. Upon careful consideration of the entire record in this matter, and for the reasons stated below, plaintiff's Motion for Leave to File an Amended Complaint will be granted; defendant's Motion to Dismiss or in the Alternative for Summary Judgment will be granted in substantial part; plaintiff's Cross–Motion for Summary Judgment will be denied in substantial part; and the Court's decision on one discrete issue shall be held in abeyance pending submission of affidavit(s), declaration(s) or other evidence by defendant on that issue.

## BACKGROUND

*Regulatory Setting*

The Army's Officer Evaluation System is designed to identify "officers who are best qualified for promotion" and to distinguish between those officers "who should be kept on active duty, those who should be retained in grade, and those who should be eliminated" from the Army. Army Regulation (AR) 623–105 § 1–5(a). The Army collects the necessary information on each officer's performance through the Officer Evaluation Reporting System. *Id.* § 1–6. Under that system, each officer is evaluated by a rater, who is senior to the officer in the chain of command and who is the person most familiar with the officer's day-to-day performance, *id.* § 3–4, and by a senior rater, who is higher in the chain of command than the rater and who

evaluates the officer "from a broad organizational perspective," *id.* § 3–10.

Each officer is evaluated annually on DA Form 67–8, the Officer Evaluation Report (OER).[1] In addition to administrative data, *id.* § 4–10, a completed OER contains a performance evaluation of the officer's professionalism, *id.* § 4–13; the rater's evaluation of the officer's performance and potential, *id.* § 4–14; and the senior rater's comparison of the officer to other officers of the same rank in the senior rater's command, *id.* § 4–16. Each participant signs the OER when she[2] completes her portion of the form—for example, the officer signs the report after completing the administrative data section, *id.* § 4–11(c)(3), the rater and senior rater sign after completing their portions of the form, *id.* § 4–11(c)(4).

An OER is also required when an officer is relieved for cause. *Id.* § 5–18(a). "Relief for cause is defined as an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty." *Id.* An officer fails in her performance of duty when she does not "complet[e] [] assigned tasks in a competent manner and [in] compliance at all time with the accepted professional officer standards" as outlined on the OER form. *Id.* A completed relief-for-cause OER must be referred to the officer for acknowledgment and comment before it is submitted to Army Headquarters. *Id.* § 5–28.

According to Army regulations, OERs are presumed to "be administratively correct," to "have been prepared by the proper rating officials," and to "represent the considered opinion and objective judgment of the rating officials at the time of preparation." *Id.* § 9–2(a) (the "presumptions of regularity"). However, if the officer believes that the OER is substantively incorrect because it is based on "bias, prejudice, inaccur[acy] or unjust rating," *id.* § 9–2(i), she may appeal to an Officer Special Review Board (OSRB). Such an appeal must be filed within five years of the

---

1. Two other types of evaluations—school evaluations and DA evaluations—are part of the Officer Evaluation System, *see* AR 623–105 § 1–5(b), but are not at issue in this case.

2. Because the officer in this case is female, the Court will use "she" and "her" rather than "he or she" and "his or her."

OER's completion date, *id.* § 9–3(b), and "must be supported by substantiating evidence." *Id.* § 9–2(f). The burden of proof on appeal rests with the officer to show by clear and convincing evidence [3] that the presumptions of regularity described above should not apply and that "action is warranted to correct a material error, inaccuracy, or injustice." *Id.* § 9–7(a). Evidence of a personality conflict between the officer and her rater or senior rater "does not constitute grounds for relief" unless the officer can show "conclusively that the conflict resulted in an inaccurate or unjust evaluation." *Id.* § 9–9(c)(2).

Proceedings before the OSRB are administrative and non-adversarial; the officer and her counsel are not authorized to appear before the Board. *Id.* § 9–8(b). The OSRB is not bound by the Federal Rules of Evidence, but keeps "within the reasonable bounds of evidence that is competent, material, and relevant." *Id.* On its own initiative, the OSRB "may obtain more information from the appellant, the rating officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case." *Id.*

An appeal may be approved in whole or in part, or may be denied, depending on the merits of the case, but the OSRB will not usually take action that would worsen an appealed OER. *Id.* § 9–5(c). If the appeal is denied, the officer may submit a new appeal to the OSRB supported by new or additional evidence or the officer may appeal the OSRB's decision to the Army Board for Correction of Military Records (ABCMR). The Secretary of the Army, acting through the ABCMR, "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C.

§ 1552(a)(1). It is the officer's responsibility to present the ABCMR with sufficient relevant evidence "to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 581.3(c)(5).

*Factual Background*

The following facts are not disputed. During all events in question in this case, plaintiff held the rank of Captain in the United States Army. On December 2, 1989, the Army assigned her the position of engineer company commander. She served in that position until November 5, 1990, when her Brigade Commander Colonel Stephen A. Winsor relieved her for cause. The relief for cause was based upon an Officer Evaluation Report (OER) that stated that she could not handle stress, applied faulty logic in deviating from established standards, and did not apply standards uniformly. Her rater Lieutenant Colonel Robert F. Driscoll did not recommend her for promotion and her senior rater Colonel Winsor judged her potential to be below that of the majority of her peers.

On September 13, 1992, plaintiff appealed the relief-for-cause OER to the Officer Special Review Board (OSRB) on the grounds that it contained both administrative and substantive inaccuracies. In support of her appeal, she submitted numerous written statements from both officers and enlisted personnel and other documentation. On December 11, 1992, the OSRB issued a written opinion in which it partially approved plaintiff's appeal. As she had requested, the OSRB added an addendum to the OER addressing the alleged administrative inaccuracy.[4] However, the OSRB found that she had failed to provide clear and convincing evidence to support her claims that the relief-for-cause OER was substantively incorrect. Therefore, it denied her appeal in all other respects.

---

3. "Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy." AR 623–105 § 9–7(b).

4. Plaintiff contended that her rater signed the OER before she did contrary to Army regulations. *See* AR 623–105 § 4–11. After questioning both the rater and the senior rater about the signing of plaintiff's OER, *see* R. at 00018 &

00021, the Board recommended that the following addendum be added to plaintiff's OER:

CPT Charette contends she signed the report after the rater. The report came to me [the senior rater] with both the rater and rated officer's signatures affixed. If CPT Charette's contention is true, it would not have impacted on my rating or the results of my review of her comments to the referred report.

R. at 00025.

In parallel proceedings beginning in November 1992, the Commanding General of the United States Army Total Personnel Command (PERSCOM) initiated action to eliminate plaintiff from the Army due to substandard duty performance as evidenced by her relief-for-cause OER. As part of that elimination proceeding, all favorable personnel action with regard to her military career was suspended. The Army also convened a Board of Inquiry. That Board heard evidence from the government about plaintiff's substandard duty performance, including the relief-for-cause OER. Through counsel, plaintiff presented her own evidence to the Board, including the fact that she would not be eligible for Voluntary Separation Incentive pay unless the Board recommended that she be retained in the Army. Her counsel requested that the Board make a specific finding as to the basis for the relief-for-cause OER. Although the Board recommended that plaintiff be retained in the Army with no rehabilitative transfer, the Board refused to make any special finding regarding the relief-for-cause OER. The Board's recommendation to retain plaintiff in the Army was approved by the appropriate Army officials in July 1993.

One month later—in August 1993—plaintiff voluntarily resigned from the Army; she was granted Voluntary Separation Incentive payments of $9,512.34 annually for twenty years. Nonetheless, she continued to press her case to have the relief-for-cause OER expunged from her military records. Specifically, she appealed the OSRB's denial of her substantive appeal to the Army Board for Correction of Military Records (ABCMR). She argued that the Board of Inquiry's decision to retain her on active duty demonstrated that the relief-for-cause OER was substantively incorrect and, therefore, her relief for cause was unjust.

On December 7, 1994, the ABCMR issued a memorandum decision finding no errors or unjust determinations in plaintiff's records. The ABCMR concluded that the Board of Inquiry's recommendation that Captain Charette be retained did not demonstrate that the relief-for-cause OER was substantively wrong because the Board specifically declined to address that question. A year later, plaintiff filed a request for reconsideration of her relief-for-cause appeal with the OSRB and included a copy of the Board of Inquiry's transcript as newly discovered evidence. The OSRB returned her request without action, indicating that she should seek reconsideration from the ABCMR since that body had denied her relief after taking into account the Board's transcript.

While she continued her quest to expunge her military records, plaintiff joined an Army reserve unit as a Captain. However, she was not selected for promotion to Major on two different occasions and therefore was separated from active reserve status on September 3, 1996.

Months later, she filed this lawsuit. According to her Complaint, she believes that the ABCMR and 1996 OSRB decisions, which denied her request to have the OER expunged from her records, should be overturned by this Court. The plaintiff argues that the Army's denial of relief was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law. Specifically, she requests that the Court order the Army to set aside, or at a minimum amend, her relief-for-cause OER or place the OER in the restricted section of her official personnel file. Finally, she requests that the Army be required to set aside her non-selections for Major, grant her promotion reconsideration, and reinstate her to active reserve status in a non-paying training capacity pending promotion reconsideration.[5]

---

5. In her original Complaint, plaintiff sought reinstatement to active reserve status without the qualifier of non-paying training status. However, defendant argued in his motion that this Court lacked subject matter jurisdiction over plaintiff's Complaint because, by seeking reinstatement to the active reserves, she was requesting monetary damages against the United States in excess of $10,000. Def.'s Mot. to Dismiss or in the Alternative for Summ. J. at 9–11. In response, plaintiff moved for leave to file an amended complaint. Pl.'s Mot. for Leave to File Am. Compl. Defendant has not opposed this request and the federal rules require that leave to amend "be freely given when justice so requires." See FED. R. CIV. P. 15(a). Accordingly, plaintiff's motion for leave to file an Amended Complaint shall be granted. Further references

## DISCUSSION

Presently before the Court are defendant's Motion to Dismiss or in the Alternative for Summary Judgment and plaintiff's Cross–Motion for Summary Judgment. In his motion, defendant asserts that plaintiff's claims for promotion and reinstatement are nonjusticiable military matters. He further asserts that summary judgment in his favor on plaintiff's other claims is appropriate because plaintiff has failed to overcome the strong presumption that military administrators discharge their duties correctly and lawfully, rather than arbitrarily and capriciously. He also argues that the ABCMR and OSRB decisions were fully supported by the administrative record. Finally, defendant disagrees with plaintiff's conclusion that, because the Board of Inquiry voted to retain her in the Army, the Board must have determined that the relief-for-cause OER was substantively incorrect.

### I. *Summary Judgment Standard*

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of the Court on a motion for summary judgment is not to weigh the evidence, but to determine whether genuine issues of material fact exist for trial. *Abraham v. Graphic Arts Int'l Union,* 660 F.2d 811, 814 (D.C.Cir.1981). To survive summary judgment, the nonmoving party must offer more than mere allegations, *Anderson,* 477 U.S. at 249, by going "beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the material facts proffered by the nonmoving party are subject to diverse interpretations, summary judgment is not available. *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Any doubts must be resolved in favor of the nonmoving party, *Abraham,* 660 F.2d at 815, and the nonmoving party is entitled to all justifiable inferences. *Anderson,* 477 U.S. at 255.

### II. *Justiciability*

In its leading opinion on the issue of the justiciability of claims such as plaintiff's, this Circuit warned that

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, et cetera] can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1511 (D.C.Cir.1989) (brackets in Court of Appeals opinion) (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)). The Court further cautioned that the "Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Id.* (quoting *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973)). In light of these principles, the Court determined that requests for retroactive military promotions fall "squarely within the realm of nonjusticiable military personnel decisions." *Id.*

On the other hand, that same Court found that claims that a Board for Correction of Military Records had acted arbitrarily and

---

in this opinion to the "complaint" should be construed as references to plaintiff's amended

complaint.

capriciously "require the district court merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to appellant's record." *Id.* Because adjudication of these claims requires a court to determine whether the Secretary's decision making process was *deficient*, rather than whether his decision was *correct*, such claims are justiciable. *Id.* However, should a court find the Secretary's decision making process deficient, appropriate relief consists only of remand to the Secretary with instructions to follow the appropriate legal standard and to explain his reasoning more fully. *Id.* at 1512.

■ In this case, plaintiff's claims that the Secretary of the Army acted arbitrarily and capriciously, abused his discretion, or otherwise employed deficient decision making processes are clearly justiciable under familiar principles of administrative law. *See, e.g., Frizelle v. Slater,* 111 F.3d 172, 177 (D.C.Cir.1997) (finding Board arbitrary when it failed to respond to two of plaintiff's arguments that were not frivolous on their face and could have affected the Board's decision); *Smith v. Dalton,* 927 F.Supp. 1, 9–10 (D.D.C. 1996) (remanding to the Board because Board did not have full opportunity to consider the entire record); *Nethery v. Orr,* 566 F.Supp. 804, 808 (D.D.C.1983) (finding the Board did not act arbitrarily in refusing to construct a fictional basis for plaintiff's discharge). However, plaintiff's request for reinstatement and promotion reconsideration are clearly not justiciable because consideration of these claims would require this Court to intrude upon military personnel decisions committed exclusively to the legislative and executive branches. *See Kreis,* 866 F.2d at 1511 ("To grant such relief [judicial promotion] would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation.... Not only is the task inherently unsuitable to the judicial branch, but also Congress has vested in the Secretary alone the authority to determine whether the original selection boards erred in comparing appellant to the other candidates for promotion."); *Cargill v. Marsh,* 902 F.2d 1006, 1007 (D.C.Cir.1990)

("To grant the transfer sought here, like the promotion in *Kreis,* would require [the court] to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the nation.") (internal quotations omitted).

### III. *Administrative Procedures Act Review*

■ As discussed above, plaintiff's claims that the ABCMR and OSRB acted arbitrarily and capriciously, abused their discretion, or otherwise employed deficient decision making processes are clearly justiciable under familiar principles of administrative law. However, the function of this Court is not to serve as a super correction board that reweighs the evidence. *See Walker v. Shannon,* 848 F.Supp. 250, 255 (D.D.C.1994). In fact, this Circuit has stated that APA review of the Boards' decisions are subject to "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1514 (D.C.Cir.1989). This high degree of deference stems from the statutory language authorizing the Secretary to correct military records *"when the Secretary considers it necessary* to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). As the *Kreis* Court said, "[i]t is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act *'when he considers it necessary* to correct an error or remove an injustice,' 10 U.S.C. § 1552(a), than if he is required to act whenever a court determines that certain objective conditions are met, i.e., that there has been an error or injustice." *Kreis,* 866 F.2d at 1514.

### A. *The Effect of the Board of Inquiry Decision*

■ In this case, plaintiff challenges the refusal of the ABCMR to expunge her relief-for-cause OER from her personnel file and the OSRB's denial of her appeal of that decision as arbitrary and capricious. Plaintiff's arguments in that regard hinge upon her interpretation of the Board of Inquiry's decision that she should be retained in the Army rather than eliminated. She argues

that the Board's decision means that it determined that the OER was substantively invalid. Therefore, she claims that the ABCMR and OSRB denials of relief were arbitrary and capricious, abuses of discretion, and unsupported by substantial evidence because those denials maintained a substantively invalid OER in her active personnel file where it could be considered by promotion boards. Accordingly, although plaintiff does not challenge the Board of Inquiry's decision, this Court's analysis of her claims must first consider whether the Board of Inquiry did, in fact, determine that the relief-for-cause OER was substantively invalid.

In plaintiff's view, the fact that the Board of Inquiry voted to retain her is conclusive proof that "the Army had finally determined that the OER allegations of substandard performance were not supported by a preponderance of the evidence." Pl.'s Cross–Mot. for Summ. J. at 18–19. Therefore, following plaintiff's reasoning, because the Board implicitly found the OER to be substantively inaccurate, the OSRB and ABCMR were arbitrary and capricious in that they refused to expunge this report from her record. However, neither the clear language of the applicable regulations nor the transcript of the Board of Inquiry proceedings support plaintiff's interpretation of that Board's decision.

The Army regulations governing elimination state that a relief-for-cause OER "gives rise to serious doubt about the advisability of permitting the officer concerned to retain a commission or warrant and requires review of his or her *overall record*." AR 635–100 § 5–12(a) (emphasis added). The purpose of such review is "to determine if such derogatory information, when viewed in conjunction with other aspects of his or her record, warrants recommendation for elimination." *Id.*

The regulations specifically note that "[s]tanding alone, [a relief-for-cause OER] may not support elimination. On the other hand, it may combine with other known deficiencies to form a pattern which, when viewed in relation to an individual's overall record, requires elimination." *Id.*

Plainly the regulations require that a Board of Inquiry consider a relief-for-cause OER in the broader context of the officer's entire record. Within the clear letter of these regulations, a Board could find that the relief-for-cause OER alone is sufficient evidence of substandard performance of duty, *see id.* § 5–10, to warrant elimination; that a relief-for-cause OER, combined with "other known deficiencies," warrants elimination; or that a relief-for-cause OER, viewed in the context of an otherwise strong service record, does not warrant elimination. Plaintiff suggests a fourth possibility—that a Board of Inquiry might find a relief-for-cause OER to be substantively incorrect and therefore no evidence whatsoever of substandard performance of duty and no justification for elimination of the officer in question.

In plaintiff's case, the Board voted for retention rather than elimination. Therefore, presumably the Board determined that *either:* in light of plaintiff's otherwise strong service record, the relief-for-cause OER, although valid, did not warrant elimination *or* that the relief-for-cause OER was invalid and therefore not grounds for eliminating plaintiff from the Army. The distinction between the two possibilities is crucial to plaintiff's case. Unfortunately, even though plaintiff's counsel requested that the Board make a specific finding regarding the validity of the contested OER, the Board apparently made no findings whatsoever.[6] Especially when

---

6. Under AR 635–100 § 5–47(a)(1), "[b]ased on the evidence presented at the hearing, the board [of inquiry] will make separate findings with respect to each factual allegation and each reason for elimination (para. 5–10 and 5–11 above). A brief statement of the reason(s) (including factual data when considered necessary for clarification) for each finding will be included." Subsection (b) specifies that the "findings and recommendations of the board will be announced to the respondent when determined." *Id.* Nevertheless, plaintiff's Board of Inquiry announced only the following:

Captain Carol A. Charette, this Board of Inquiry by majority vote and secret written ballot in closed session gives the following finding and recommendation: retention without reassignment.

R. at 00107 (Tr. of Board of Inquiry proceedings at TR. p. 325). Because the Board announced no findings with regard to the factual allegations against plaintiff, the Board's procedure appears to be contrary to applicable regulation. However, the Board's decision has not been challenged by either party in this action.

viewed in light of the equivocal nature of the Board of Inquiry hearing, *see infra*, the Board's recommendation that plaintiff should be retained does not support a reasonable inference that the Board found the OER invalid.

Consideration of the Board members' comments and questions at plaintiff's elimination hearing makes it even less appropriate for the Court to speculate as to the conclusions that underlay the Board's recommendation that plaintiff be retained. As example, the Board questioned several witnesses about plaintiff's personality traits and how aspects of her personality affected her relationships with her superior officers.[7] One Board member asked Captain Jacqueline Coffee, formerly plaintiff's Executive Officer, the following questions:

Q: Do you think that, uh, the relationship that the Battalion Commander had with her [plaintiff] was, uh, because she was a woman?

A: Sir, I don't think so. Uh, sir, I do think that her brutal honesty bothered him. I don't think that it would—uh, whether she was male or female would have made a difference.

Q: So she didn't have tact?

A: Yes, sir.

Q: And, uh, in dealing with your superior, think you have a little tact?

A: Yes, sir.

R. at 00075 (TR. p. 154). Similarly, a Board member discussed plaintiff's personality with Major Carla Coulson, the senior female officer in the Battalion:

Q: The—her personality and the Battalion Commander's personality clearly clashed.

A: Yes. Yes, sir.

Q: How about her personality and your personality? I mean, you, you could get pissed off at each other every once in a while, but were you able to get along together?

A: Well, yes, and we did. I can tell you there are a number of times when I, when I hung up on Captain Charette when I was mad at her and she was a Company Commander. She probably made me as angry as she made the Battalion Commander. You know, it's just, just, uh, she's very direct, very aggressive and also tactless person . . .

R. at 00099 (TR. p. 279). Major Coulson also testified that, had she been Battalion Commander, she would have relieved plaintiff for insubordination. R. at 00100 (TR. p. 289). Interestingly, during plaintiff's testimony, two Board members lectured her about her disruptive personality traits. One Board member began his examination of plaintiff by stating:

I've got a couple of things here. I, I guess the first lesson that I'm hoping you've learned, that you understand is that you, as a subordinate, need to adjust. I mean, it happens to all of us. It happens to the three of us sitting up here [i.e., the three Board members]. So there's really no point. I mean, you have to adjust to whoever your boss is at any given time. And you have to be tactful in your approach of doing business. Apparently that seemed evident to us that maybe you're not.

R. at 00078 (TR. p. 170–71). The President of the Board used even stronger language in his remarks to plaintiff:

Q: Let, let me just say something that you have the denied [sic] that no matter, Colonel Maggio pointed out, *no matter what happens, or what the Board decides, you are part of the problem.* Just mainly because you don't understand the flexibility of your personality vis a vis your boss. I have a strong personality. Probably as strong as yours.

---

Therefore, the Court will make no ruling as to the administrative sufficiency of the Board's procedures.

**7.** The Army regulations governing appeals of adverse OERs specifically state that "a personality conflict between appellant and a rating official does not constitute grounds for relief; it must be shown conclusively that the conflict resulted in an inaccurate or unjust evaluation." AR 623–105 § 9–9b(2)

Maybe even stronger. You get [sic] to be flexible in dealing with people. It's not about the Army, it's about life.

Plaintiff: Uh-huh.

Q: You will never, ever be as strong as your boss, personality-wise. You're the one that bends, not the boss and you need to acknowledge that. You can— whatever this Board decides. It's not so much a part of the Army, it's about life. But you need to realize that....

R. at 00081 (TR. p. 183–84).

The Board's emphasis on plaintiff's responsibility for tempering her personality was counterbalanced by the Board members' apparent concern for an equitable end to plaintiff's career. After learning on the first day of the hearing that plaintiff had attempted to resign voluntarily and that her offer had been rejected due to the "flag" on favorable personnel actions, a Board member asked "Can somebody—I don't know whether it's the legal, legal factor in this session or in closed session, could somebody take the three of us through what the options are now? ... [W]e need to know what the next set of options are before time ticks away." R. at 00082 (TR. p. 193). Plaintiff's counsel obliged:

Mr. Meyers: If Captain Charette is not retained, she will leave the Army with nothing. Zero.

Board: Honorable discharge.

Mr. Meyers: Honorable discharge. Yes, honorable discharge.

Board: [illegible word] about the separation pay?

Mr. Burlingame: No, not true. No, not separation [illegible word].

Mr. Meyers: That's part of the problem. Zero, if she is not retained. If she is retained, and then, uh, if Rif, which, I think if [sic] fair to say, given the fact that the Rif Board has met.... So, if she is riffed, albeit retained, she then is impostured to receive, on the before tax basis, $37,737.48, and after taxes $30,189.98.

...

Mr. Meyers: ... That's if she's riffed.... If for some reason, she is not riffed, and becomes eligible for V.S.I., S.S.B., then, with regard to the V.S.I. she would have an opportunity to receive for the next ten years, excuse me. Yes, V.S.I. the next ten years, $9,434 a year before taxes and $7,547 a year after taxes. S.S.B. on the other hand, were she to be put in the posture were [sic] that would be possible, the before tax lump sum would be $56,606.22 and the after tax amount would be $45,-245—284, excuse me. Now for that to occur, of course, we have to accomplish the following result. We've got to go back to the O.S.R.B. and get this O.S.R., this O.E.R. removed. And as you have rightfully pointed out, under the evident circumstances that exist today, those prospects have been asentotically (ph.) [sic] going out to zero with time....

R. at 00083 (TR. pp. 194–96). The next morning, plaintiff's options were revisted:

Mr. Burlingame: Mr. President, yesterday there was an issues [sic] as to whether or not [plaintiff] was entitled to separation pay. Between Government and [plaintiff's] counsel we have, uh, got the deity [sic] circular which in fact will show that she will not get separation pay and [plaintiff's] Counsel has a copy of that.

...

Board: Okay. Is there still a window to apply for a V.S.I. or that window is dead and you just now sit and wait for the RIF list to be released?

Cpt. Burmeister: Uhm, well, sir, I believe the window's open through tomorrow. However, the flag wouldn't be lifted except by PERS-

COM and that's not going to happen by tomorrow.

R. at 00093 (TR. pp. 248–49).

Based upon the transcript of the Board of Inquiry hearing, it appears that the Board members clearly recognized that a personality conflict existed between plaintiff and her superior officers. However, it is also quite clear that the Board believed that much of the conflict was due to plaintiff's failure to temper her abrasive, tactless personality. The Court finds no evidence in the transcript to indicate that the Board found that this personality conflict "resulted in an inaccurate or unjust evaluation." *See supra* n. 7. On the contrary, it appears that the Board—with its questions regarding plaintiff's entitlement to various payments—was concerned with fashioning an equitable remedy to plaintiff's unfortunate, but not unjust, predicament.

By recommending that plaintiff be retained in the Army without making a finding that the OER was substantively invalid, the Board side-stepped the issue of fault, recognizing that plaintiff would then resign from the Army with some possibility of monetary reward for her years of service. Accordingly, based upon the entire record of the Board of Inquiry proceedings, the Court cannot reasonably infer that the Board determined that the relief-for-cause OER was invalid. Therefore, the Court does not find that the ABCMR and 1996 OSRB were arbitrary and capricious when those boards likewise refused to infer that the Board of Inquiry had invalidated the relief-for-cause OER. Because the OER had not been determined to be invalid, the ABCMR and OSRB did not abuse their discretion or act otherwise improperly by denying plaintiff relief and maintaining that document in her personnel file.

## B. Consideration of General Ballard's Statements

Plaintiff next complains that the ABCMR and the 1996 OSRB decisions are unsupported by substantial evidence because those boards failed to consider the stipulated testimony or supporting statements of Brigadier General Ballard.

As plaintiff's brigade commander, then-Colonel Ballard was plaintiff's senior rater from December 1989 to June 1990, in other words, for approximately the first half of the rating period covered by the relief-for-cause OER. When General Ballard left command of plaintiff's brigade, he was permitted by Army regulations to submit an optional report on plaintiff or any other officer for whom he was the senior rater. *See* AR 623–105 § 5–22 ("Senior rater option"). He chose not to submit such a report for plaintiff.[8] However, in May 1993, General Ballard submitted to the Board of Inquiry a document consisting of six short paragraphs entitled "Stipulation of Expected Testimony." *See* Pl.'s Cross-Mot. for Summ. J.App. p. D–1. In that document, General Ballard stated that

> I have a good opinion of CPT Charette. She was a very good officer. She was opinionated but not disruptive. I would not rate her in the top block, but I would rate her above center of mass, above average. CPT Charette had a tough command and was doing extremely well when I left.

*Id.* at ¶ 2. In the same document, he stated that Colonel Driscoll "was not a good com-

---

8. According to Colonel Driscoll's testimony before the Board of Inquiry, "General Ballards' philosophy was the only time you do those option raters, is if the person—it it's really going to help the soldier or if the soldier is obviously so bad after three or four months that it's time to nail the coffin with that kind of report." R. at 00086 (TR. p. 213). At the time General Ballard left, plaintiff was not a great Company Commander but her chain of command was still counseling her and expecting improvement. *Id.* (TR. p. 214). Therefore, because General Ballard did not believe that an optional report indicting plaintiff was "center of mass" would be helpful to her career, he did not complete an option evaluation report. *Id.*

The stipulation of General Ballard's testimony presented to the Board of Inquiry describes his decision somewhat differently. According to that statement, when General Ballard left he "offered to do senior rater option OERs on those Company Commanders recommended for such by their Battalion Commanders." Pl.'s Cross-Mot. for Summ. J.App. p. D–1. He "had [plaintiff] in mind" when he made that offer but "LTC Driscoll did not recommend that she receive a report" and General Ballard "chose not to override his decision." *Id.* According to his stipulated testimony, General Ballard "would not rate [plaintiff] in the top block, but [] would rate her above center of mass, above average." *Id.*

mander," that he "did not do a good job mentoring and guiding his junior officers," and that he "did not treat other officers well." *Id.* at ¶ 5. Finally, he concluded that in his opinion plaintiff's "relief was a result of a personality conflict between her and her Battalion Commander and not her ability to perform her assigned duties." [9]

Plaintiff alleges that the 1996 OSRB and the ABCMR decisions are unsupported by substantial evidence because they relied on the findings of 1992 OSRB and that Board did not have General Ballard's statements before it. However, it was plaintiff's burden to present the 1992 OSRB with General Ballard's views, if she believed them to be relevant to her appeal. Army regulations clearly state that the "burden of proof rests with the appellant" and that "the appellant must produce evidence that establishes clearly and convincingly" that the "action is warranted to correct material error, inaccuracy or injustice." AR 623–105 § 9–7. In her initial appeal of the OER, plaintiff presented the OSRB with supporting statements from twenty different people [10] and many other supporting documents, but did *not* present a statement from Brigadier General Ballard.

In addition, the regulations governing the OSRB state that "board *may* obtain more information from the appellant, the rating officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case." AR 623–105 § 9–8b (emphasis added). The regulations do not require the OSRB to seek any evidence in addition to that presented by the officer or to contact any persons. In this case the OSRB contacted Colonel Winsor, plaintiff's senior rater; LTC Driscoll, plaintiff's rater; and Major

Coulson, the Battalion Operations and Planning Officer (S–3) as well as the Battalion's highest ranking female officer. The OSRB did not contact General Ballard, but it was not required to do so.

Accordingly, plaintiff's arguments that the ABCMR and 1996 OSRB decisions are unsupported by substantial evidence because those Boards relied on the 1992 OSRB determination are clearly facetious. There were no statements from General Ballard before the 1992 OSRB because plaintiff failed to submit any such statements. The ABCMR and 1996 OSRB decisions could only be faulted had they failed to consider the statements of General Balled and if that evidence had been properly before those Boards.

With regard to the ABCMR decision, plaintiff presents no evidence to show that she submitted General Ballard's statements to the ABCMR. She alleges only that she submitted "a summarized transcript of the May 1993 BOI proceedings to the BCMR, as the verbatim transcript was unavailable at that time." Pl.'s Mem. p. 4. The ABCMR reviewed plaintiff's application and her Military Personnel Record, R. at 00003, and determined that plaintiff "failed to submit evidence" to demonstrate "that the record is in error on unjust." R. at 00005. Because the ABCMR considered all evidence properly before it at the time of its decision, the Court finds that the ABCMR decision was not unsupported by substantial evidence, an abuse of discretion, or arbitrary and capricious.

With regard to the 1996 OSRB decision, plaintiff did submit both General Ballard's "Stipulation of Expected Testimony [to the Board of Inquiry]" and his "Letter of Support for Retention on Active Duty." *See*

---

9. *Id.* Also included with plaintiff's exhibits is an *undated,* one-page memorandum from General Ballard "for Director, Officer Personnel Management, U.S. Total Army Personnel Command." Pl.'s Cross–Mot. for Summ. J.App. p. D–3. (General Ballard's May 1993 stipulation of expected testimony refers to a letter he had written to PERSCOM, so apparently this letter was written prior to May 1993.) His memorandum states that "CPT Charette performed superbly as a commander. If I had written an OER, she would have rated center-of-mass or higher of those officers I rated. I saw no evidence to substantiate allegations of apathy, defective atti-

tudes or to question her personal conduct or character." *Id.* It was also his opinion, in that memorandum, that "CPT Charette's problems as a commander during this period was [sic] the result of a personality conflict with the Battalion Commander and not her ability to perform assigned duties." *Id.*

10. Plaintiff submitted supporting statements from eight officers, ten enlisted personnel, and two civilians. R. at 00011–00013. Many of these people submitted multiple statements. *See,* *e.g.,* R. at 00012 (items 29, 32, 39, 42, 43, 52, 55 & 67 are all statements of Major Coulson).

Pl.'s App. B–3 & D–1 through D–3. However, the OSRB declined to hear her appeal, stating that

> Your appeal correspondence was "Previewed" to the DCSPER Officer Special Review Board (OSRB) to determine if there was sufficient new evidence to warrant adjudication by the Board. However, the Board President returned the appeal as not acceptable indicating that the Board of Inquiry covers the entire period of service and while it does address incidents prior to relief, it does not invalidate the relief itself. The President further stated that there is some conflicting data but the initial adjudication was sufficient to conclude that the relief was proper and that the rating officials were consistent with other creditable statements. *BG Ballard's comments, notwithstanding, are not appropriate for the period of contested report.*

Pl.'s App. B–1 (emphasis added). The ambiguous statement "BG Ballard's comments, notwithstanding, are not appropriate for the period of contested report" could be read several different ways. For example, it could indicate that the OSRB conducted a cursory review of General Ballard's comments, determined that they addressed conduct outside the rating period, and therefore did not consider his comments substantively in determining whether or not to grant plaintiff's appeal. On the other hand, the term "notwithstanding" could indicate that the OSRB substantively considered General Ballard's comments and determined that, not only did they not substantively effect its decision, but also that they did not address the time frame during which the specific incidents that formed the basis for plaintiff's

relief-for-cause occurred.[11] The sentence may have any number of other meanings.

With only the sparse statement before her, the Court cannot determine which of the possible interpretations was meant by the OSRB. Therefore, resolution of this single issue must be held in abeyance until the OSRB, through affidavit(s), declaration(s) or other evidence, explains in detail what was meant by "BG Ballard's comments, notwithstanding, are not appropriate for the period of contested report."[12] Defendant is cautioned, however, that these materials should be merely explanatory of the original record and should not contain new rationalizations for its action. Specifically, the OSRB must indicate whether it did substantively consider General Ballard's statement or whether it gave the statements only a cursory examination before determining that they were "not appropriate to the period of contested report." If the OSRB considered the statements substantively, it must further give a brief reason why it determined that those statements "were not appropriate to the period of contested report" and did not constitute "sufficient new evidence to warrant adjudication by the Board." Pl.'s App. B–1 (1996 OSRB determination).

### C. Administrative Double Jeopardy Argument

 In September 1996 plaintiff was discharged from the United States Army Reserves because she had twice been non-selected for promotion from Captain to Major. Statute requires that Reserve Officers who are twice considered, but not selected, for promotion must be discharged from active

---

11. Plaintiff's "Officer Evaluation Report Comments" document, R. at 00030–00045, reveals that most of the incidents underlying her relief-for-cause OER occurred after June of 1990; then-Colonel Ballard left command of plaintiff's brigade in June 1990. For example, all of the problems related to C Company's performance during the field exercise occurred between October 19 and November 2, 1990. *See, e.g.,* R. at 00031 (sleeping arrangements); R. at 00034 (cooks sleeping in mess tent, rations exposed to rain, no feeding plan). Similarly, the construction problems with a moving target wall were discovered on August 2, 1990. R. at 00040.

12. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In the interest of judicial economy, the Court wishes to avoid remand if this question can be resolved quickly. Therefore, assuming that defendant submits the requested information promptly, the parties will be permitted the opportunity to brief this issue and the Court will then resolve it promptly. However, should the defendant be unable to produce this information in a timely fashion, the Court will remand this issue to the defendant so that proceedings on this issue can be reopened.

Reserve status.[13] However, plaintiff claims that these promotion non-selections violated her right to be free from administrative double jeopardy. Specifically, she argues that once the Army approved the Board of Inquiry's recommendation that she be retained, the Army was bound to remove her relief-for-cause OER from her personnel file so that it could not be considered by future promotion selection boards.

Plaintiff reads the Army's administrative double jeopardy provision too broadly. The regulation at issue here is included in a chapter entitled "Eliminations" and provides that:

> Except as expressly provided in *d* below, no officer will be considered for *elimination* for the reasons stated in paragraph 5-10 [substandard performance of duty] and 5-11 [misconduct, moral or professional dereliction or in interests of national security], because of conduct which has been the subject of administrative elimination proceedings which resulted in a final determination that the officer should be retained in the service.[14]

As discussed in detail *supra*, in Army terminology "elimination" is a very specific type of review undertaken by a Board of Inquiry to determine whether allegations of substandard performance or misconduct are so substantial that the officer in question should be forced to leave the Army. *See* AR 635-100 § 5-1; *see also supra* pp. 14-15. Plaintiff was considered for *elimination* only once, by the Board of Inquiry in 1993. That Board recommended that she be retained in the Army, but made no findings as to the validity of the relief-for-cause OER and clearly made no recommendations as to whether plaintiff should be promoted to higher rank. As also discussed in great detail *supra*, the Board's recommendation of retention does not conclusively indicate that it determined the relief-

for-cause OER was substantively invalid. For that reason, the Army cannot be considered to have acted arbitrarily or capriciously by declining to remove the OER from plaintiff's personnel records.

In addition, the information in plaintiff's relief-for-cause OER, along with all of her other OERs, would obviously be relevant to a promotion board considering whether plaintiff was as qualified as other Army Reserve Captains for promotion to Major. The promotion board's consideration of that OER did not contravene the double jeopardy provision of AR 635-100 § 5-3(b) because the promotion board was not making *elimination* decisions. Therefore, the Army was not arbitrary and capricious in *discharging* plaintiff under the clear statutory language requiring that Reserve Captains who are twice non-selected for Major be discharged from the Army Reserves.

██ Likewise, the Army's action here does not contravene the provisions of the Privacy Act. That Act requires that an Agency only maintain in its records information about an individual that "is relevant and necessary to accomplish a purpose of the agency" and that the information be maintained "with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure fairness to the individual." 5 U.S.C. § 552a(e). The "primary function of the [Army's] Officer Evaluation Reporting System is to provide information for [Department of Army] use in making personnel management decision." AR 623-105 § 1-6(c). The Army included in plaintiff's personnel file a relief-for-cause OER that had been upheld through three successive appeals and used that information in making personnel management, specifically promotion, deci-

---

**13.** Prior to October 1, 1996, 10 U.S.C. § 3846 provided that reserve first lieutenants, captains and majors who were twice non-selected for promotion should be transferred to the Retired Reserves, if qualified therefore, and if not so qualified, should be discharged. 10 U.S.C. § 3846. That provision was repealed by Pub.L. 103-337, 108 Stat. 2963 (Oct. 5, 1994), and replaced by 10 U.S.C. § 14505. According to that provision, after October 1, 1996, a reserve Army captain "who has failed of selection for promotion to the next higher grade for the second time ... and

who has not been selected for continuation on the reserve active-status list ... shall be separated" from the Army. 10 U.S.C. § 14505.

**14.** AR 635-100 § 5-3(b) (emphasis added). Subsection *d* provides for cases where substantial new evidence is discovered after the administrative elimination proceeding, where subsequent conduct justifies such action, or where an express exemption is granted. *Id.* § 5-3(d).

sions. The Court finds that the Army did not violate the Privacy Act.

## D. Contrary to Law

▉ According to Army Command Policy regulations, "[a]ction to relieve an officer from any command position will not be taken until after written approval by the first general officer in the chain of command of the officer being relieved is obtained." AR 600–20 § 2–15(a). In plaintiff's case, before plaintiff was relieved of command, her senior rater Colonel Winsor contacted the DCINC's office to "find out if he had the authority to relieve" plaintiff. R. at 00022. Colonel Winsor spoke with the DCINC's Executive Officer who, after checking into the matter, told Colonel Winsor that "he had the authority to act as the general officer approval authority in relief of company command cases and, specifically, he had the authority to relieve" plaintiff. Id. However, Colonel Winsor did not receive this authority in writing. Id.

As part of her initial appeal before the OSRB in 1992, plaintiff argued that her relief-for-cause was contrary to law and Army regulation because Colonel Winsor did not obtain written approval before relieving her. The OSRB's full consideration of this argument included contacting Colonel Winsor to question him specifically about his authority to relieve plaintiff. The OSRB concluded that

> In this case, the board notes that the SR [senior rater] sought approval of and clarification on what authority he had in the [plaintiff's] proposed relief. Further, the SR did not proceed with the relief action until after receiving word form the DCINC's XO that he had the authority to act. Although the regulation stipulates that written general officer approval is required, the board opines that both the spirit and intent of the regulation was followed in this case.

R. at 00025.

The role of this Court is not to reweigh the evidence or to function as a super correction panel. See Walker v. Shannon, 848 F.Supp. 250, 255 (D.D.C.1994). Therefore, the question before the Court on this matter is whether the Secretary has acted arbitrarily and capriciously by not correcting plaintiff's record after the OSRB found that the letter of the regulation, although not its spirit or intent, had been violated. As discussed above, the Secretary is not *required* to act in every instance in which an error has occurred; instead, he must act only "when he considers it necessary to correct an error or remove an injustice." See 10 U.S.C. § 1552(a)(1); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C.Cir.1989). In this case, the Court must defer to the Secretary's determination that, although a technical violation of the regulation had occurred, action was not necessary to correct an error or remove an injustice. In plaintiff's case, the initial OSRB thoroughly reviewed the allegations underlying plaintiff's relief-for-cause OER and determined that her relief was valid and appropriate. A Board of Inquiry investigated many of the same allegations and declined to make a finding that the OER was substantively invalid. The ABCMR upheld plaintiff's relief-for-cause. It was reasonable, rather than arbitrary, for the Secretary to determine that a technical violation of a procedural rule did not result in an error or injustice that required his action.

## CONCLUSION

After thorough consideration of the entire record in this matter and for the reasons stated above, it is hereby

**ORDERED** that plaintiff's Motion to File an Amended Complaint is granted; it is

**FURTHER ORDERED** that defendant's Motion for Summary Judgment is granted as to all claims except the issue of whether the 1996 OSRB properly considered the statements of General Ballard; it is

**FURTHER ORDERED** that plaintiff's Cross–Motion for Summary Judgment is denied as to all claims except the issue of whether the 1996 OSRB properly considered the statements of General Ballard; it is

**FURTHER ORDERED** that, with respect to plaintiff's claim regarding the 1996 OSRB's consideration of Brigadier General Ballard's supporting comments, the Court's decision on the motions shall be held in abey-

ance pending submission by the defendant of clarifying affidavit(s), declaration(s) or other evidence. Such affidavits or testimony shall be submitted on or before April 30, 1998. *There shall be no extensions,* Should the government, for any reason whatsoever, not submit clarifying affidavits or other testimony by that deadline, with a courtesy copy to Chambers, this issue shall be remanded to the government so that it may reopen its proceedings as to this claim. It is

**FURTHER ORDERED** that, provided the government submits the requested information on or before April 30, 1998, and as appropriate, the parties shall renew their motions for summary judgment solely with respect to plaintiff's claim regarding General Ballard's statements on or before May 14, 1998; oppositions shall be due on or before May 22, 1998; and replies, if any, shall be due on or before May 29, 1998. *There shall be no extensions of these deadlines.*

Judgment will be entered in this case once the final claim is resolved.